**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Janice Sue Taylor, et al.,<br><br>Defendants. | No. CV-23-00506-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Default Judgement (Doc. 55), Defendant 11 Mile Corner Land Trust's Motion for Discovery (Doc. 60), Defendant Desiree E. Saunders' Motion to Deny Claim of Federal Jurisdiction (Doc. 63), Motion to Vacate in Favor of Trustee, Motion to Set aside Entry of any Default Motion, and Motion to Dismiss with Prejudice (Doc. 66). After reviewing the briefing and relevant case law, the Court will grant Plaintiff's Motion for Default Judgment (Doc. 55). The remainder of the pending Motion's will be denied as either moot, violative of the Local Rules of Civil Procedure in blatant disregard of this Court's warning (*see* Doc. 41), or outright frivolous.

**I.   BACKGROUND**

This case arises from alleged unpaid tax assessments, civil penalties, and the United States' attempt to foreclose tax liens on several properties (the "Subject Properties") belonging to Defendants. (*See* Doc. 1.) The United States alleges that Ms. Taylor has unpaid federal tax liabilities, and therefore, the government may claim an interest in the real properties at issue. (*Id.* at 3 ¶ 5.) Mr. McBride, Ms. Taylor's husband, is the trustee

of several land trusts that have an interest in the Subject Properties. (*Id.* ¶ 6.) Ms. Saunders is Ms. Taylor's daughter and similarly is the trustee of other land trusts that have an interest in the Subject Properties. (*Id.* ¶ 7.) The Subject Properties comprise eleven pieces of real property in Pinal County and Maricopa County, Arizona. (*Id.* at 5 ¶ 19.)

In 2010, Ms. Taylor was indicted on charges of tax evasion and failure to file tax returns for tax years 2003 through 2006. (*Id.* at 11 ¶ 68.) After a five-day jury trial, she was found guilty and was sentenced to 78 months in federal prison and was also ordered to pay $2,234,219 in restitution. (*Id.* ¶¶ 68–69.) After Ms. Taylor's trial, the Internal Revenue Service ("IRS") determined her tax liability for tax years 2003 through 2006 and sent her a notice of deficiency that also included proposed additional tax and penalties. (*Id.* at 11–12 ¶¶ 71–72.) In 2006, the United States brought a summons enforcement case against Ms. Taylor in this District. (*Id.* at 12 ¶ 75.) However, she refused to comply with a court order to turn over documents to the IRS. (*Id.* ¶ 76.) As a result, she was held in contempt for over two years. (*Id.*) A portion of the contempt sanctions was an award of $4,339.33 in costs, which the IRS assessed against her in 2013. (*Id.* ¶ 78.) The United States alleges that despite notice and demand for payment of all these assessments, Ms. Taylor has "neglected, refused, or failed to fully pay" them. (*Id.* ¶ 80.) Moreover, the United States notes that interest, penalties, and statutory additions have accrued and will continue to accrue as provided by law. (*Id.* at 13 ¶ 82.) Ms. Taylor's total federal tax liability, as alleged in the Complaint, is $3,727,865.28, plus interest and applicable statutory additions. (*Id.*)

The United States alleges that Ms. Taylor utilizes sham trusts (the "Taylor Trusts") or entities (the "Taylor Entities") to hold title to the Subject Properties and shield them from creditors. (*Id.* at 15–16 ¶¶ 88–92.) The trustees on several of the Taylor Trusts are Mr. McBride and Ms. Saunders.[1] (*See id.* at 5–11 ¶¶ 19–65.) The United States seeks an

---

[1] The Taylor Trusts that Ronald McBride serves as trustee for are the following Defendants: Burning Bush Ministries Land Trust, Barstow Land Trust; Pioneer Land Trust, and Sunscape #2 Land Trust. The Taylor Trusts with that Saunders serves as trustee for are the following Defendants: MMM Land Trust; Higley Citrus Trust #D2, Pierce Family Trust; Myracine Land Trust; Barstow Land Trust; and Sunscape 37 Land Trust. The Taylor Entities are Burning Bush Ministries, McBride Musical Ministries, Herbal Research

order entering default judgment against Ms. Taylor for her full federal tax liability and foreclosing the federal tax liens on the Subject Properties. (*Id.* at 29–30.) On January 3, 2024, the Clerk of the District of Arizona entered default against Defendants Burning Bush Ministries Land Trust, Pierce Family Trust Dated November 15, 2006, Barstow Land Trust Dated March 8, 2005, Pioneer Land Trust, Sunscape #2 Land Trust Dated April 18, 2005, MMM Land Trust Dated October 3, 2003, Higley Citrus Trust #D2, Myracine Land Trust Dated November 1, 2004, Sunscape 37 Land Trust Dated November 1, 2004, Burning Bush Ministries, McBride Musical Ministries, Herbal Research Institute, Service Finance Company LLC, Tamaron Homeowners Association, Peacepipe 20 LLC, Maricopa County, Janice Sue Taylor and Ronald McBride. (Doc. 49.) The United States now moves for default judgment against these Defendants.[2] (Doc. 55.)

## II. LEGAL STANDARD

A court's decision to enter a default judgment is discretionary, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), and is "ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In consideration a motion for default judgment, a court takes "the well-pleaded factual allegations" in the pleadings "as true." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). But "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Id.*

Courts may consider various factors, including:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount in controversy; (5) the possibility of factual dispute; (6) whether the default was due to excusable neglect; and (7) the strong preference to decide cases on the merits.

*Eitel*, 782 F.2d at 1472. "The merits of the plaintiff's substantive claim and the sufficiency

---

Institute, and Peacepipe 20 LLC.
[2] The Court previously dismissed Defendants Eloy Cota, Sunset Ranch Investments LLC, DJ Point LLC, and 11 Mile Corner Land Trust. (Doc. 44.) Pinal County stipulated to priority with the United States and was excused from further participation in this case. (Doc. 50.)

of the complaint are often treated by courts as the most important Eitel factors." *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015). And while some districts' local rules impose additional requirements for default judgment, the District of Arizona does not. *See, e.g.*, Local Rules W.D. Wash LCR 55(b)(2).

## III. DISCUSSION

### A. Jurisdiction

Before entering default judgment, a court must confirm that it has both personal and subject matter jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona law authorizes courts to exercise jurisdiction over persons "to the maximum extent permitted by . . . the United States Constitution." Ariz. R. Civ. P. 4.2(a). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

The Court has general personal jurisdiction over Defendants, as all have substantial contacts with Arizona. First, Defendants reside in Arizona. (*See* Doc. 8 at 1; Doc. 10 at 1.) Ms. Taylor and Mr. McBride reside in Pinal County, and Ms. Saunders resides in Maricopa County. (*See* Doc. 8 at 1; Doc. 10 at 1.) Second, the tax liabilities alleged in the Complaint arose within the District of Arizona. (*See generally* Doc. 1.) And lastly, the Subject Properties are located within this District. (*See id.* at 5–10.) Thus, the Defendants have substantial contacts with Arizona—the forum state—and they voluntarily created these contacts. The contacts are substantial, continuous, and systematic. Therefore, the Court has general personal jurisdiction over Defendants.

The Court has federal question jurisdiction because the action arises under various

federal statutes. (Doc. 1 at 15–29); *see also* 28 U.S.C. § 1340 (providing district courts with jurisdiction "of any civil action arising under any Act of Congress providing for internal revenue"); 28 U.S.C. § 1345 (granting district courts jurisdiction over actions commenced by the United States). Although, in what the Court understands to be two renewed Motions challenging jurisdiction, Ms. Saunders argues, among other things, that the United States is "attempting to exercise federal jurisdiction within a state of the America [sic] Union outside of all federal jurisdiction." (Doc. 63 at 2; Doc. 66.) Several pages of copy-pasted legal excerpts from documents, cases, and treatises, spanning the entirety of American legal history buttress the arguments therein. (*See generally* Doc. 63; Doc. 66.) No argument in the renewed Motions evince a whit of merit. In fact, the Motions themselves are best described as preposterous.

**B. Consideration of the *Eitel* Factors**

1. Possibility of prejudice to Plaintiff

Here, without judgment, the United States contends it would be unable to recover the $2,746,616.33 in accrued tax liabilities owed by Ms. Taylor as of June 24, 2024. (Doc. 55 at 3; Doc. 55-1 ("Hobson Decl.") ¶ 12.) Additionally, the United States contends that prejudice results without a determination that the Taylor Trusts and Taylor Entities are the nominees and alter-egos of Ms. Taylor because such determinations must precede collection. When the United States seeks to reduce to judgment federal taxes, it may be prejudiced when it is unable to obtain judgment. *See United States v. Maxwell*, No. CV-19-8330-PHX-DWL, 2020 WL 2319978, at *2 (D. Ariz. May 11, 2020). This is exceedingly true in cases such as this, where a judgment is the only avenue of redress for the United States to collect tax assessments before the statute of limitations expires. *See* 26 U.S.C. § 6502. Therefore, first *Eitel* factor weighs in favor of granting Plaintiff's Motion.

2. Merit of Plaintiff's claims and the sufficiency of the Complaint

The second and third *Eitel* factors are generally the most important factors for the Court's consideration in ruling on a motion for default judgment. *See Vietnam Reform*

*Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The crux of the analysis is whether the United States has stated claims upon which it may recover. *See PepsiCo, Inc. v. Calif. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal 2002); *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Importantly, after default is entered against a party, all well-pleaded allegations, excepts those related to damages, are admitted. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

The United States asserts four counts upon which it seeks default judgment:

(1) Reduce to judgment Ms. Taylor's tax assessments for 2005–2006;

(2) Determine that the Taylor Trusts and Taylor Entities are the alter egos and nominees of Ms. Taylor;

(3) Determine that the subject properties were subjects of fraudulent transfers from Ms. Taylor;

(4) Determine federal tax liens against Ms. Taylor attach to the subject properties and foreclose the liens.

(Doc. 55 at 4, 6, 12, 14.) The Court addresses each count in turn.

*i.    2005–2006 tax assessments*

"In an action to collect tax, the government bears the initial burden of proof. The government, however, may satisfy this initial burden by introducing into evidence its assessment of taxes due." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). As the United States has done so here, assessments may be evidenced by submitting IRS Forms 4340 (Certificates of Assessment and Payment). *See, e.g.*, *Norcal Gold, Inc. v. Laubly*, 543 F. Supp. 2d 1132, 1136–37 (E.D. Cal. 2008); *Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1993); *see also Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) (finding Form 4340 is a self-authenticating official document). The government must also provide "minimal factual foundation" for the assessment. *Oliver*, 921 F.2d at 920.

Here, the government has met their burden. The Complaint and declarations

provide the factual foundation for the Form 4340 and establish that the attempt to reduce the assessments to judgment were timely brought. (Doc. 1 at 2, 12–13 ¶¶ 3, 73, 78, 82; Hobson Decl. ¶¶ 3, 5–8.) Additionally, the United States has adduced sufficient evidence to support finding that the IRS properly assessed the civil penalty against Ms. Taylor under 26 U.S.C. § 6673(b). (Doc. 1 at 12–13 ¶¶ 73, 78, 82.)

Defendants do not seriously contend otherwise; they simply parrot their prior challenges to this Court's supposed lack of subject matter jurisdiction. For this reason, the Court finds that the United States has sufficiently pleaded and evidenced that it is entitled to reduce judgment Ms. Taylor's tax assessments for 2005–2006.

### ii. Ms. Taylor's nominees and alter-egos

The United States asks the Court to determine that the Taylor Trusts and Taylor Entities are the nominees and alter-egos of Ms. Taylor. (Doc. 55 at 6.) The Court begins with a brief recitation of the relevant law. If a taxpayer neglects or refuses a demand for payment following a notice of assessment, a federal lien in that amount arises and attaches to the taxpayer's property. *See* 26 U.S.C. §§ 6321, 6322. A lien arising from § 6321 applies to all property of a taxpayer, including property held by a third-party as the taxpayer's nominee or alter ego. *G.M. Leasing Corp v. United States*, 429 U.S. 338, 350–51 (1977); *see also United States v. Miller Bros.* 505 F.2d 1031, 1032 (10th Cir. 1974) (finding that the legal title holder was a stand-in nominee for the taxpayer); *TBS Props. LLC v. United States*, No. CV-20-00195-PHX-DWL, 2020 WL 783040, *11 (D. Ariz. Mar. 15, 2022) (discussing the availability of and refusing to preclude a nominee theory under *state* law). This district has previously considered the following factors as relevant to determining nominee status: (a) the absence of consideration or adequate consideration paid by the nominee; (b) whether the property was placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) a close relationship between transferor and the nominee; (d) any failure to record conveyance; (e) the retention of possession by the transferor; and (f) continued enjoyment by the transferor of benefits of the transferred property. *United States*

*v. Richardson*, No. CV–04–0739–PCT–DGC, 2006 WL 3388347, *6 (D. Ariz. 2006) (quoting *Towe Antique Ford Found. v. I.R.S.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992)).

With respect to an alter-ego a "corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form. But when [an entity] is merely [another entity's] alter ego and when observing the corporate form would work an injustice, a court may properly 'pierce the corporate veil.' . . . This 'alter ego' status exists when such unity of interest and ownership exists that the separate personalities of the corporations cease to exist. Thus, to establish that [an entity] is liable under the alter-ego theory, [a plaintiff] must show that unity of control exists, and that observance of the corporate form would sanction a fraud or promote injustice." *TBS Props.*, 2022 WL 783040, *6 (alterations in original) (quoting *Keg Restaurants Ariz., Inc. v. Jones*, 375 P.3d 1173, 1182 (Ariz. Ct. App. 2016). "Corporate status, however, is not lightly disregarded." *In re Keesling*, No. CV 12–01053–PHX–JAT, 2012 WL 5868883, *2 (D. Ariz. Nov. 19, 2012) (citing *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. 1979)). "The actions of the corporation and owners must be so closely intermixed such as to justify finding a merger of identities." *TBS Props.*, 2022 WL 783040, at *5 (cleaned up); *see also Keg Rest*aurants, 375 P.3d at 1182.

The United States offers ample evidence to prove that both the Taylor Trusts and Taylor Entities are mere nominees and alter-egos of Ms. Taylor. The Taylor Trusts that hold title to the subject properties include to MMM Land Trust; Burning Bush Ministries Land Trust; Higley Citrus Trust #D2; Pierce Family Trust; Myracine Land Trust; Barstow Land Trust; Pioneer Land Trust; Sunscape #2 Land Trust; and Sunscape 37 Land Trust, which (Doc. 1 at 15 ¶ 89.) Additionally, the Taylor Entities that hold title to the subject properties include McBride Musical Ministries, Burning Bush Ministries, and Herbal Research Institute. (*Id.* at 16 ¶ 91.) Both the Trusts and Entities were formed between October 2003 and November 2006, which was around the time the Trusts and Entities were used to acquire title to the Subject Properties. (*Id.* ¶ 92.) Ms. Taylor has signing authority and control over bank accounts used by the Trusts and Entities associated with the

purchases of the Subject Property. (*Id.* at 19 ¶¶ 109–110.) And although Ms. Taylor recorded the transfers, the deeds indicate that all transfers were to entities Ms. Taylor controls. (*Id.* at 5–9 ¶¶ 21–49.) Ms. Taylor has resided at the Subject Properties and has paid expenses, including property tax, but has not paid rent. (*Id.* at 20 ¶ 113.) Additionally, the trustees and beneficiaries for each Taylor Trust are her husband, daughter, or another entity under Ms. Taylor's control. (*Id.* ¶ 114.) Essentially, Ms. Taylor enjoys the Subject Properties as if they were titled in her name. Thus, the Court determines that the Taylor Trusts and Taylor Entities are mere nominees and alter-egos of Ms. Taylor.[3]

### iii.     *Fraudulent transfers*

The United States argues that Ms. Taylor's transfers of the Subject Properties were fraudulent under Arizona law.[4] (Doc. 55 at 12.) Before the government can collect from a transferee, it must evince that the transfer was fraudulent under Arizona Revised Statute § 44-1004. Section 44-1004(A) explains that a transfer is fraudulent as to a present or future creditor if the debtor effected the transfer with "actual intent to hinder, delay or defraud any creditor of the debtor" or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer obligation, and the debtor . . . [i]ntended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

Under Arizona law, a "creditor" is "a person who has a claim." Ariz. Rev. Stat. § 44-1001(3). Further a "claim" is broadly defined as "a right to payment" § 44-1001(2). And tax liability, even unassessed, "are deemed obligations due and owing at the close of the taxable year," which would render the United States a creditor within the ambit of Arizona's fraudulent transfer scheme. *See Edelson v. C.I.R.*, 829 F.2d 828, 833–34 (9th Cir. 1987).

To discern intent, § 44-1004(B) instructs courts to consider numerous factors,

---

[3] The United States' Complaint and Motion for Default Judgment puts forth several other facts tending to show that the Taylor Trusts and Taylor Entities are mere nominees or alter-egos of Ms. Taylor. (*See* Doc. 1; Doc. 55 at 6–12.)
[4] "Property 9" was sold outside of the instant lawsuit. (Doc. 55 at 14 n.4.) Therefore, the government is no longer seeking to foreclose upon Property 9 in this case. (*Id.*)

including whether "(1) [t]he transfer or obligation was to an insider. (2) The debtor retained possession or control of the property transferred after the transfer . . . . (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. [And] (10) the transfer occurred shortly before or shortly after a substantial debt arose." As discussed, Ms. Taylor transferred the Subject Properties to an insider—the Trusts and Entities she controls. Additionally, Ms. Taylor transferred the properties knowing that she would incur future tax debts, and the transfer would diminish her assets such that she could no longer pay that debt. Finally, Ms. Taylor continuously possessed and controlled the Subject Properties, either by residing in them or paying property related expenses. These transfers are exactly those contemplated under Arizona law as fraudulent. Therefore, the Court finds that Ms. Taylor fraudulently transferred the Subject Properties under § 44-1004, and the United States is entitled to relief as a creditor.[5] *See* Ariz. Rev. Stat. § 44-1007 (enumerating several remedies, including the attachment of a lien against the fraudulently transferred property).

### iv.   *Foreclosure of federal tax liens*

Federal statutes make clear that federal liens arising from 26 U.S.C. § 6321 attach to "all property and rights to property, whether real or personal, belonging to such person." *See* § 6322 ("[T]he lien imposed by section 6321 shall arise at the time the assessment is made.") Because the Court has determined that the Taylor Trusts and Taylor Entities possess title to the Subject Properties as the nominees, alter egos, and fraudulent transferees of Ms. Taylor, the federal tax liens against Ms. Taylor attach to the Subject Properties. *See* § 6321. Under 26 U.S.C. § 7403, the United States may "enforce [its] lien," and "subject *and property*, [of] whatever nature, of the delinquent, or *in which he has any right, title, or interest*, to the payment of such tax or liability." *United States v. Rogers*, 461 U.S. 677, 692 (1983) (emphasis in original) (alterations in original). In other words, the United States

---

[5] As the United States explains, the transfer would also be fraudulent under § 44-1004(A)(2) because Ms. Taylor did not received consideration for the transfer of the Subject Properties, and she knew or should have known that she was incurring debts beyond her ability to pay.

may sell the Subject Properties, irrespective of other interests apart from the delinquent taxpayer, and apply the proceeds towards the liens. *Id.* at 693–94; § 7403(c) ("The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.").[6]

The United States' claims are meritorious, and the Complaint is more than sufficient to substantiate the claims set forth against Defendants. Therefore, the Court finds that the second and third *Eitel* factors favor default judgment.

### 3. Amount and nature of the requested relief

"Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. Here, the United States is seeking judgment in the amount of $2,746,616.33 and to foreclose on the tax liens. (Doc. 55 at 15.) Although this is a large sum of money to enter against an individual taxpayer, the United States is not seeking any damages, attorney fees, declaratory or injunctive relief. The requested relief is limited to the tax Ms. Taylor owes under the tax code, civil penalties, statutory additions, statutory interest, and tax recoupment through lien foreclosure under § 7403. (*Id.*) The requested amount is reasonable and proportional to the Complaint's allegations, and thus this factor weighs in favor of default judgment. *Cf. O'Brien v. United States*, No. 2:07-CV-00986-GMN, 2010 WL 3636171, *4 (D. Nev. Sept. 9, 2010) (finding the fourth *Eitel* factor to weigh in favor of default when the United States sought approximately $3 million in tax liabilities).

### 4. Dispute of material facts; excusable neglect; policy considerations

The remaining *Eitel* factors also weigh in favor of default judgment. After default

---

[6] Defendants Service Finance Company LLC, Tamaron Homeowners Association, and Maricopa County have been properly served and have not claimed an independent interest in the Subject Properties. Therefore, the sale of those properties will occur irrespective of the existence of any unasserted interests. *See Rogers*, 461 U.S. at 692; § 7403.

- 11 -

is entered, the Court must construe well-pleaded allegations as true. *Cripps*, 980 F.2d at 1267. The evidence presented by the United States demonstrates the unlikelihood of material facts in dispute. Indeed, Defendants have done nothing to put any material fact at issue in this case and have instead elected to file several meritless briefs. (*See, e.g.*, Docs. 60, 63, 66.) In other words, the United States' Complaint is replete with factual allegations that Defendants do not controvert.

Regarding excusable neglect, the United States properly served all Defendants. Ms. Taylor, Mr. McBride, Ms. Saunders, and the related Trusts and Entities, have not answered the Complaint, but have filed several motions, signifying their knowledge of and participation in this suit. Nothing else in the record, nor Defendants' arguments, tend to show that entry of default judgment would be a result of excusable neglect.

As a matter of policy, default judgment is generally disfavored, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, 'indicates that this preference, standing alone, is not dispositive.'" *Zekelman Indus. Inc. v. Marker*, CV-19-02109-PHX-DWL, 2020 WL 1495210, *4 (D. Ariz. Mar. 27, 2020) (quoting *PepsiCo*, 238 F. Supp. 2d at 1177). Thus, even though this factor inevitably weighs against default judgment, it alone cannot overcome this Court's finding that all other factors weigh in favor of default judgment.

Ultimately, the sum of the *Eitel* factors support entering default judgment in this case.[7]

## IV.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting the United States' Motion for Default Judgment (Doc. 55).

---

[7] Ms. Saunders has also filed a Motion titled "Request for Discovery On Sale Of 11 Mile Corner Trust, Paperwork Distribution," (Doc. 60), which is seemingly related to several motions filed after the Clerk's entry of default (*see* Doc. 57). The Motion is seemingly an attempt feign ignorance about the relationship between herself, Ms. Taylor, and the Subject Properties. The Court will deny this Motion.

**IT IS FURTHER ORDERED** that default judgment is entered against Janice Sue Taylor for federal income tax assessments for tax years 2005-2006 and civil penalty for 2006 in the amount of $2,746,616.33 as of June 24, 2024, plus interest and other statutory additions under 28 U.S.C. § 1961(c) and 26 U.S.C. §§ 6601, 6621, and 6622, which have accrued and will continue to accrue according to law until judgment is paid, less any payments and credits.

**IT IS FURTHER ORDERED** that federal tax liens attach to the Subject Properties because they are held by the nominees, alter egos, and fraudulent transferees of Janice Sue Taylor.

**IT IS FURTHER ORDERED** foreclosing the United States' tax liens encumbering the Subject Properties, authorizing the sale of those properties under 26 U.S.C. § 7403, and disbursement of the net proceeds to all creditors subject to the creditor's priority.

**IT IS FURTHER ORDERED** requiring the United States to submit a proposed order of foreclosure that incorporate the terms of its priority stipulation with Pinal County.

**IT IS FURTHER ORDERED** denying Defendants Motion for Discovery (Doc. 60), Motion to Deny Claim of Federal Jurisdiction (Doc. 63), Motion to Vacate in Favor of Trustee, Motion to Set aside Entry of any Default Motion, and Motion to Dismiss with Prejudice (Doc. 66).

Dated this 19th day of November, 2024.

Honorable Susan M. Brnovich
United States District Judge